# IN THE COURT OF APPEALS OF IOWA

No. 23-0803
Filed August 7, 2024

**BRYAN LEE ROCHE,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Linn County, Andrew Chappell,

Judge.

        Bryan Roche appeals the denial of his application for postconviction relief.

**AFFIRMED.**

        Thomas M. McIntee, Williamsburg, for appellant.

        Brenna Bird, Attorney General, and Zachary Miller, Assistant Attorney

General, for appellee State.

        Considered by Greer, P.J., Ahlers, J., and Mullins, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2024).

**MULLINS, Senior Judge.**

Bryan Roche appeals the denial of his application for postconviction relief (PCR) following his convictions for first-degree kidnapping, first-degree sexual abuse, attempted murder, and willful injury. We previously surveyed some of the facts underlying those convictions on direct appeal. *See generally State v. Roche*, No. 14-2052, 2016 WL 1130291, at *1–2 (Iowa Ct. App. Mar. 23, 2016). In summary, Roche tied up and gagged his victim, raped her in various locations about her apartment, and then stabbed her in the neck and abdomen. *See id.* at *1. In the ensuing PCR proceeding, Roche claimed his attorneys in the criminal proceeding were ineffective in various respects. The district court denied relief.

We interpret Roche's brief on appeal to argue the PCR court erred in rejecting his claims that criminal trial counsel were ineffective in: (1) failing to raise a claim that his inculpatory statements to police were improperly induced with promises of leniency, (2) not otherwise challenging his confession as involuntary, (3) not challenging the confinement element of first-degree kidnapping, (4) not challenging the jury instructions in relation to the requirement that serious injury occur during the commission of the sexual abuse or offering evidence and argument to the jury on this point, (5) ineffectively cross-examining the victim, and (6) improperly conceding guilt in closing argument.

## I.      Background Facts and Proceedings

To put it simply, the evidence against Roche was overwhelming. S.P. and Roche met in 2012 through an online social networking website and became friends. According to S.P., they were never in an intimate or boyfriend-girlfriend-type relationship. On April 21, 2013, Roche presented himself at S.P.'s apartment.

There was conflicting evidence about the extent they had communicated recently and when S.P. learned Roche was there. What's clear is that S.P. told Roche she was going to clean her apartment, but he could come inside if he wanted.

Once inside, S.P. started cleaning while she and Roche caught up. Eventually, Roche attempted to give S.P. a back rub, but she "brushed his hands off of" her. As S.P. was picking things up with her back to Roche, he attacked her. S.P. explained Roche choked her from behind to the point that she lost consciousness. When she came to, she was lying on the ground in the living room while Roche had his knee to her back and was in the process of tying her hands behind her back with red tape. After he finished, Roche removed S.P.'s sock, put it in her mouth, and placed tape over her mouth. Roche then removed S.P.'s clothes with a pair of blue scissors, removed his own clothes, rolled S.P. over, and began rubbing and kissing her breasts. Roche applied a condom, penetrated S.P.'s vagina with his penis, and then turned S.P. over and penetrated her anus with his penis. By this point, the sock had fallen out of S.P.'s mouth and she screamed for help, upon which Roche told her he would harm her daughter—who was present in the apartment—if she wasn't quiet.

From there, Roche picked S.P. up and carried her to her bedroom, where he again penetrated her. The next thing S.P. knew, she was lying on her back in the hallway, where Roche penetrated her again and ejaculated. After Roche ejaculated, he retrieved a knife from his coat in the living room, returned to S.P., and told her to lay on her stomach. S.P. complied after Roche told her he wouldn't hurt her if she did so. But, as soon as she laid down on her stomach, Roche stabbed her in the neck. S.P.'s hands broke free, upon which she jumped up to

hold her neck. Then Roche stabbed S.P. in the abdomen. S.P. retreated to her room, closed the door, and held it shut. They spoke through the door for awhile, during which Roche told S.P.: "I only came over here to rape you, but it got out of hand." S.P. tried to convince Roche to leave. After about two hours, Roche said he wanted to leave because S.P.'s "blood was starting to smell pretty bad," but he made S.P. give him the red tape he used on her because it was evidence, which S.P. gave to Roche by cracking her door open and throwing it out. S.P. then heard the front door slam.

After waiting about another thirty minutes, S.P. went to retrieve her cell phone from the living room, but it was gone. She then proceeded to a downstairs neighbor for help. That neighbor, Gary Schwab, testified he heard a commotion coming from S.P.'s apartment earlier. Later, he heard someone leave S.P.'s apartment and come down the stairs. About ten or fifteen minutes after he heard someone leave S.P.'s apartment, Schwab heard a light knocking on his door accompanied by someone saying, "help me." Schwab opened the door and found S.P., who was bloody and reported she had been stabbed. An ambulance was summoned and transported S.P. to the hospital.

Detective Douglas Larison interviewed S.P. a couple of days later, during which S.P. identified Roche as her assailant. Detective Larison then interviewed Roche at the police station. Roche initially denied doing anything to harm S.P. But, in the end, Roche confessed. He told police he tied S.P. up with red tape, raped her, and stabbed her twice. He led police to a dumpster roughly one block away from S.P.'s residence, in which there was a plastic sack containing evidence of the crime: a used condom, a condom wrapper, a pair of blue scissors, three

knives, and red tape. The used condom contained DNA from both Roche and S.P. One of the knives had S.P.'s blood on it. One of Roche's fingerprints was on the tape and plastic sack. Police also seized Roche's coat, which contained two unused condoms matching the wrapper found in the dumpster.

Roche was charged with and convicted for the crimes noted above and sentenced to life in prison without the possibility of parole. We affirmed on direct appeal. *See generally id.* at *1–5. The district court denied Roche's ensuing application for postconviction relief, and this appeal followed.

## II.    Error Preservation

As the State indicates, Roche's claims on appeal are plagued with error-preservation problems. Because Roche's claims on appeal expand on and interpose the claims that were specifically raised in and decided by the district court, it is important for us to first narrow the confines of the issues before us from an error-preservation standpoint. *See Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." (citation omitted)).

In his pro se PCR application, filed in 2017, Roche raised claims that he was "promised leniency" and counsel's "trial strategy could not be considered sound or tactical" and "fell below [the] standard for competent counsel." In a "pretrial statement" filed by court-appointed counsel, Roche only argued that his "trial counsel were ineffective in not presenting certain evidence and in making ineffective and damaging arguments." At the PCR trial in 2023, the parties merely

discussed the evidence to be submitted for the court's consideration and the schedule for additional briefing from the parties.

In his post-trial brief, Roche first argued that his confession was involuntary due to being "inexperienced in dealing with police interrogation" and the use of police tactics involving "harsh language," "good cop/bad cop," "making up a timeline," and "putting words in [his] mouth." Roche claimed that, although his motion to suppress was denied, his counsel should have provided the jury "with all of the facts surrounding the interrogation" by "introduc[ing] the entire interrogation transcript or recording," which could have convinced the jury that his statements were not reliable. Second, Roche argued counsel were ineffective in challenging the confinement element for first-degree kidnapping. While Roche asserted counsel should have brought "out facts that would show that there was no confinement that would increase the risk of harm, detection or escape," Roche did not identify what those facts were. Third, Roche submitted counsel should have argued, for purposes of first-degree sexual abuse, that a serious injury did not occur during the commission of the abuse, since he stabbed the victim only after he raped her. Fourth, Roche argued counsel failed to effectively challenge the victim's credibility on cross-examination by pointing out "[s]he was a stripper . . . and her child's father was in jail" and highlighting technical inconsistencies in her version of the events. Last, Roche argued counsel should have addressed all the foregoing matters in closing argument.

Turning to the question of what claims are properly before us, and beginning with Roche's first and second claims on appeal concerning promises of leniency and the voluntariness of his confession, the PCR court did not address either claim,

likely because they were not developed beyond passive mention in the pleadings. As to counsels' performance concerning the reliability of Roche's interrogation statements, the court only considered whether counsel were ineffective in failing to introduce the transcript or recording of the interrogation. So, the claim on appeal about promises of leniency is not preserved, nor is the direct claim raised on appeal that Roche's confession was involuntary.[1]

Roche's third claim on appeal is that counsel were ineffective in challenging the confinement element for first-degree kidnapping. The State agrees Roche preserved error on this claim, and so do we, at least minimally. Roche argued to the PCR court that counsel should have done a better job in challenging the confinement element for first-degree kidnapping, a claim the district court specifically rejected.

Roche's fourth claim on appeal is that counsel were ineffective for not challenging the jury instructions in relation to the requirement that serious injury occur during the commission of the sexual abuse or offering evidence and argument to the jury on this point. The jury instruction portion of this claim was

---

[1] We note we already rejected the involuntariness claim on direct appeal in any event, *see Roche*, 2016 WL 1130291, at *2–4, so it is therefore already the subject of a final adjudication, *see* Iowa Code § 822.8 ("Any ground finally adjudicated . . . in the proceeding that resulted in the conviction or sentence, or in any other proceeding the applicant has taken to secure relief, may not be the basis for a subsequent application . . . ."); *Beeman v. State*, No. 21-1129, 2022 WL 2826015, at *3 (Iowa Ct. App. July 20, 2022) ("[O]ur [prior] appellate decision serves as a head-on final adjudication on that issue as well.").

Also, Roche does not re-up on his specific claim that was raised and decided in the district court—that counsel should have introduced the transcript or recording of the interrogation—so we deem it waived. *See* Iowa R. App. P. 6.903(2)(a)(8)(3) (recently renumbered from rule 6.903(2)(g)(3)).

neither raised in nor decided by the district court and is therefore not preserved.[2] Since the district court addressed Roche's argument that counsel should have argued, for purposes of first-degree sexual abuse, that a serious injury did not occur during the commission of the abuse, we find that portion of the claim is preserved.

Roche's fifth argument on appeal is that counsel were ineffective in challenging the victim's credibility on cross-examination. We agree with the State that this claim was raised and decided by the district court.

Last, Roche argues counsel were "ineffective by improperly presenting a concession of guilt in closing arguments." But Roche's claim in the district court about closing arguments was essentially a catch-all claim that all of his other arguments should have been raised in some fashion in closing argument. That overarching argument did not raise the concession-of-guilt claim that is now being raised on appeal. Nor did the district court address such a claim. So we agree with the State that this claim is not preserved.

That leaves us with three claims, whether counsel were ineffective in challenging (1) the confinement element for kidnapping, (2) the contemporaneity of serious injury and sexual abuse, and (3) the victim's credibility.

## III. Standard of Review

Appellate review of the district court's denial of a PCR application alleging ineffective assistance of counsel is de novo. *See Sothman v. State*, 967 N.W.2d 521, 522 (Iowa 2021).

---

[2] We also note the jury-instruction claim is a repackaged argument that we rejected on direct appeal. *See Roche*, 2016 WL 1130291, at *4–5.

## IV. Discussion

Because Roche's claims concern the effectiveness of his criminal trial attorneys, he must prove that (1) counsel failed to perform an essential duty and (2) prejudice resulted. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Lopez*, 907 N.W.2d 112, 116 (Iowa 2018). We "may consider either the prejudice prong or breach of duty first, and failure to find either one will preclude relief." *State v. McNeal*, 897 N.W.2d 697, 703 (Iowa 2017) (citation omitted). As to breach, courts presume counsel performed competently, and an applicant "must rebut the presumption of competence by showing . . . counsel's representation fell below an objective standard of reasonableness." *State v. Lorenzo Baltazar*, 935 N.W.2d 862, 868 (Iowa 2019) (citation and internal quotation marks omitted). This involves a showing that "counsel ma[de] such serious errors that counsel [was] not functioning as the advocate the Sixth Amendment guarantees." *Id.* at 869 (citation omitted). As to prejudice, Roche "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Walker*, 935 N.W.2d 874, 881 (Iowa 2019) (citation omitted).

### A. Kidnapping

On first-degree kidnapping, the jury was instructed that the State had to prove Roche confined S.P. Confinement was defined as follows:

> "Confinement" requires more than what is included in the commission of the crime of sexual abuse.
> A person is "confined" when her freedom to move about is substantially restricted by force, threat or deception. The person may be confined either in the place where the restriction began or in a place to which she has been removed.

No minimum time of confinement is required. It must be more than slight. The confinement must have significance apart from the alleged sexual abuse.

In determining whether confinement exists, you may consider whether:
(1) The risk of harm to [S.P.] was substantially increased.
(2) The risk of detection was significantly reduced.
(3) Escape was made significantly easier.

Roche appears to acknowledge that his lead trial attorney's strategy was to challenge the confinement element for first-degree kidnapping, but he argues counsel "was completely ineffective in pursing and carrying out this strategy." Roche first argues counsel "did not focus on the elements of confinement" and "in his final closing argument he even said that [Roche] was guilty of false imprisonment . . . thereby admitting the element of confinement."[3] He argues this "was not a strategy," but rather "an abdication of the adversarial duty of counsel." But Roche takes counsel's statements in closing completely out of context. The charge of first-degree kidnapping related to Roche tying S.P. up and committing sex acts. When counsel said false imprisonment was potentially on the table as a lesser-included offense, he made clear the confinement he was talking about was when S.P. was in her bedroom well after the sexual abuse and stabbings. We find no breach or prejudice on this point.

From there, while Roche agrees counsel "did bring out some facts favorable to the defense on the issue of confinement," he submits counsel "did not bring out facts that would show that there was no confinement that would increase the risk

---

[3] In this portion of his brief, Roche also argues "nothing would be gained by just challenging the kidnapping charge" since he also faced life imprisonment for first-degree sexual abuse." But this isn't really a claim of ineffectiveness in relation to kidnapping. And, as will be discussed, counsel also reasonably challenged the sexual-abuse charge.

of harm, detection or escape, as required," and counsel "did not emphasize these elements in closing argument." But Roche does not point to what facts counsel should have highlighted for the jury. *See Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994) ("When complaining about the adequacy of an attorney's representation, it is not enough to simply claim that counsel should have done a better job. The applicant must state the specific ways in which counsel's performance was inadequate and identify how competent representation probably would have changed the outcome." (internal citation omitted)). Given the largely undisputed circumstances of the crime, counsel had little reason to pursue the course Roche submits he should have. *See Roche*, 2016 WL 1130291, at *2 (discussing how the circumstances substantially increased the risk of harm, significantly lessened the risk of detection, and significantly facilitated Roche's escape). Instead, counsel reasonably attempted to challenge confinement from a different angle. Specifically, in closing argument, counsel pointed out that the jury instructions defined confinement to require more than what is included in the commission of the crime of sexual abuse. He then pointed to testimony he drew out on cross-examination of two police officers, one being the investigating detective, that confinement is "almost always" part of sexual abuse. He then argued "[t]hat's what happened here," claiming S.P. was tied up and gagged only incidental to the sexual abuse.

We conclude Roche has not overcome the presumption of competence or shown a reasonable probability of a different outcome as to his conviction for first-degree kidnapping. We therefore affirm the district court's rejection of this ineffective-assistance claim.

B.    Sexual Abuse

On the charge of first-degree sexual abuse, the jury was instructed that the State was required to prove that "[d]uring the commission of sexual abuse, the defendant caused [S.P.] a serious injury."   The jury was further instructed as follows:

> [T]he serious injury need not occur simultaneously with the commission of the sexual abuse in order to constitute first-degree sexual abuse.  It is sufficient if the serious injury precedes or follows the sexual abuse as long as the injury and sexual abuse occur as part of an unbroken chain of events or as part of one continuous series of acts connected with one another.

Roche's preserved claim is that counsel was ineffective in not offering evidence and argument on a defense that the serious injury did not occur during the commission of sexual abuse.

Trouble is, that's exactly the defense that counsel pursued.  Specifically, defense counsel highlighted on cross-examination of multiple witnesses that they had no knowledge of how close in time the sexual abuse and serious injury occurred in relation to one another.   And, on cross-examination of the victim, defense counsel attempted to establish a break in the chain of events by pointing out that, after the sexual assault ended in the hallway, Roche had to go to the living room to retrieve his knife from his coat and then return to the hallway before stabbing S.P.  In closing argument, defense counsel specifically argued Roche's actions were not "one complete act."  Counsel followed up on that theme when he argued the evidence showed "the commission of [sexual abuse] came to an end"

before Roche stabbed S.P., and there was therefore "a break in the action or the chain of events at this point in time."

Later, counsel argued any serious injury the victim suffered did not occur during the commission of sexual abuse. He pointed to the victim's testimony that Roche did not possess a weapon while the sex acts were occurring. Because the sex acts and stabbing were separated by Roche going to the living room to retrieve the knife, counsel argued there was "a break in the chain of events." In other words, "[t]he serious injury came after the sex abuse." Unfortunately, counsel had little to work with because the living room and hallway were in close proximity. Counsel can only do so much with bad facts, and that's exactly what the facts were here. We likewise find no breach or prejudice on this claim and affirm the district court.

C.      Victim's Credibility

Finally, Roche complains that his attorney did not effectively cross-examine the victim. He says the victim should have been cross-examined about the facts that "[s]he was a stripper at Dancer's Ranch and her child's father was in jail." Next, Roche points out that S.P. gave minor inconsistencies in her testimony about when she realized it was Roche sitting outside the front of her apartment and their communication leading up to the incident. Roche also seems to suggest S.P.'s testimony was not credible because she said he put a sock in her mouth, but the evidence showed she was later able to talk to him. Roche goes on to suggest S.P. was not credible because the supposed stab wound to the front of her neck occurred while she was lying on her stomach, which "would be highly unlikely, if not impossible." Last, Roche argues "S.P.'s timeline of events did not jibe with the

rest of the evidence," because she testified Roche left about two hours after the attack and then she remained in her room for another thirty minutes thereafter, while Schwab testified S.P. came to his apartment for help about fifteen minutes after he heard someone leave.

Roche argues counsel should have examined S.P. on cross about the foregoing inconsistencies to downplay her credibility. But the fact about S.P.'s employment at the "Dancer's Ranch" was indeed drawn out on cross-examination. Moreover, it's hard to imagine how S.P.'s credibility would be diminished by this fact, or the mere fact that her child's father was in jail. Defense counsel also drew out the inconsistencies about when S.P. realized Roche was at her apartment and their level of communication leading up to the crimes. As to the sock in her mouth and ability to speak to Roche during the assault, S.P. unequivocally testified the sock fell out of her mouth during the sexual assault, so the claimed inconsistency is inconsequential. Next, the scenario of S.P. being wounded to the front while on her stomach is certainly not as unlikely as Roche suggests, let alone impossible. And the timeline of events provided between S.P. and Schwab was not so inconsistent as to have any effect on S.P.'s credibility.

Roche is essentially claiming counsel should have done a better job in cross-examining the victim. But that is not enough to support a claim of ineffective assistance. *See Dunbar*, 515 N.W.2d at 15. And, as noted, the evidence against Roche was nothing less than overwhelming. We conclude Roche failed to meet his burden to show counsel failed to perform an essential duty or a reasonable probability of a different outcome.

**V.** **Conclusion**

Having found counsel was not ineffective as alleged, we affirm the district court's denial of Roche's PCR application.

**AFFIRMED.**